KIRTLAND *vs.* THE MAYOR, ETC., OF MACON *et al.*

| 66 | 385 |
|-----|-----|
| 114 | 174 |

[This case was argued at the last term and the decision reserved.]

1. The finding of the presiding judge passing upon this case, by consent, without a jury, was not contrary to law or the evidence.
2. The municipal authorities of the city of Macon had power to allow encroachments on the streets.
(a) The power to allow a portion of a street to be encroached upon and fenced in would carry with it the power to allow improvements to be placed thereon.
·(b) One beneficiary of an ordinance allowing certain encroachments on a street is estopped from denying its validity as against the municipal authorities and another beneficiary.

New Trial. Municipal Corporations. Estoppel. Before Judge SIMMONS. Bibb Superior Court. April Term, 1880.

By the act of 1857, the mayor and council of Macon were empowered, in cases of encroachments upon its streets, to remove the same, or to permit and sanction them for a fair and reasonable compensation, having regard to the interests of property-holders to be affected thereby. In the same year the municipal authorities agreed to allow the holders of property on a certain portion of Spring street to encroach thereon forty feet, in consideration of making certain improvements; this was done, the forty feet put under fence, and has remained so ever since. Both the lot of Kirtland and that now held by Mrs. Strohecker received this accession. It seems that Kirtland has since so altered his steps as to slightly occupy this encroachment. Mrs. Strohecker has made a lease from the city of the forty feet so added to her lot for 999 years, with power to build thereon, and purposes so building. To prevent this, Kirtland filed this bill, alleging that his lot would be damaged, that no proper authority for that purpose had been granted, etc. On the

trial, the case was submitted to the judge without a jury. The evidence on the subject of damages was conflicting. The judge found for defendant. Complainant moved for a new trial. It was refused and he excepted.

Complainant insisted that the lease and permission to build had not been properly granted, because section 170 of the ordinances provided that "no streets or alleys shall be laid out, closed or altered without the consent of three-fourths of the city council" at a regular meeting, and that the applicant should publish notice of his intention to make the application for thirty days, which provisions had not been complied with. Also that section 216 provided the mode of obtaining a lease on any part of the city common after publication, etc.

WHITTLE & WHITTLE, for plaintiff in error.

HILL & HARRIS; R. K. HINES; H. F. STROHECKER, for defendants.

JACKSON, Chief Justice.

This cause was submitted to the court on law and facts without the intervention of a jury; the judgment rendered on the whole case was for the defendants; it is sought to set it aside and have a new hearing solely on the ground that the verdict or judgment is contrary to law and evidence; on the motion for a new trial on that ground alone, the court again decided against the complainant, and to that judgment he excepts.

Without regard to any other legal question made in the case, it is clear that if the city had the authority to make the lease, the equity of *this complainant* depends upon injury or damage—*nuisance*—to him, and on that question the testimony is quite conflicting.

The bill is brought by him to enjoin the city of Macon from carrying out a contract it made with the co-defendant, Mrs. Strohecker, to allow her, by lease for nine hun-

dred and ninety-nine years, to build upon a street encroachment which her grantor and herself had used as an enclosure for more than twenty years by a previous grant from the city to all the lot owners on Spring street, in Macon, including the complainant, the first grant having prohibited the erection of buildings on the encroachment. It is undisputed that the present open street will not be interfered with at all, but will remain just as it has stood for over twenty years; that the complainant has had the same width of front of encroachment for the same time; that this original grant was made in 1857; that the consideration paid was sewerage, by the property holders, and other improvements in grading and working Spring street, at a cost of several hundred dollars, and that the sole complaint is the removal of the disability to build contained in that original grant. Does that removal hurt the complainant? Is it injurious to his residence? Does it damage his property? Will it be, in any sense, a nuisance to him, should its removal result in the erection of dwelling houses on the Strohecker lot nearer the present line of Spring street than forty feet? These are the practical questions on which the equity of complainant to enjoin the city of Macon and Mrs. Strohecker from carrying out the trade, or rather in the present state of the pleadings, his equity to restrain her from building, rests, as she has paid the price charged and got her lease for nine hundred and ninety-nine years. On those questions the witnesses differ, and we cannot say that the preponderance is not with the judgment of the court below. Certainly the reasons given by the witnesses for defendants would seem to show that the erection of neat, substantial dwelling-houses along the street on which complainant lives, with a neat railing in front, would make his surroundings more sightly than the present back grounds and high, close palings of the Strohecker lot, and would counterbalance any disadvantage which might possibly result from his neighbor's dwellings being built a little nearer the street than his own.

Be that as it may, the judge below, as jury, has settled it against the complainant, and, as judge on the motion for a new trial, he has deliberately re-affirmed that finding, and it would be against all our prior rulings to overrule him, unless his discretion had been abused, of which there can be no pretense in this case.

Besides, it seems that the complainant himself has projected his front steps to the porch of his house, if not part of the porch itself, on the forty feet encroachment which he got at the same time that the Strohecker lot obtained its addition, which, while it is a trifle, of course, compared with a substantial building, goes beyond the grant merely to enclose as a yard or shrubbery. If *ultra vires*, an inch is as much violative of law as an ell, and he who invokes equity to help him, by the harsh process of injunction especially, must present hands entirely clean himself.

But it is not *ultra vires* if the city has the power to grant encroachments on the streets in its charter from the state; and that it does possess that power seems clear from the 2d section of the act of 1857 which amended the charter. Acts of 1857, p. 182.

In respect to other ordinances of the city conflicting with this ordinance, we have only to say that in our view of the point it is wholly immaterial.

The same power that made the former ordinance can repeal or annul it. One legislative body cannot make an irrepealable law so as to fetter another, unless the obligation of a contract by the former be involved. Cities may change their ordinances every year if council like, and so long as they do not go beyond their chartered authority, nobody can complain.

Certain power over the public streets, to widen or narrow them, to straighten or grade them by depression or elevation, the city of Macon possesses:

The very fact that she granted the encroachment of forty feet in 1857 shows that she exercised this power,

and the fact that the complainant acquiesced in it and received valuable property under it, estops him from denying the validity of the ordinance.

If she could grant the right to enclose, why not the right to improve the enclosure? If to improve by the extension of porticoes or steps, why not by tasteful buildings? If by flower-gardens, why not by summer-houses or other adornments of those gardens? The very moment the right to grant the encroachment and to fence it, so as to make exclusive and private what had been public and common, is conceded, that moment what the grant may convey to the private and exclusive possessor is a question of degree and not of jurisdiction. Acts of 1857, p. 182; 42 *Ga.*, 631; 50 *Ib.*, 451; 57 *Ib.*, 523; Code, 3002, 2998, 2999, 3000; 2 Dill. Mun. Corp., §519 *et seq.*

It is well to note that this case differs from those reported in 12 *Ga.*, 239; 30 *Ib.*, 506; 33 *Ib.*, 601, and 49 *Ib.*, 476, in the essential particular that the act of 1857, amendatory of the charter of Macon, confers the power to grant encroachments, with the single qualification of "due regard to the interests of the property-holders who may be affected thereby," thus narrowing the inquiry to this point: is the complainant injured by this contract?

We do not think that section 170 of the ordinances touches this ordinance, and that a vote of three-fourths of council was necessary to pass it.

The street, as altered for value in 1857 and clearly defined from Mulberry street to Washington Avenue, is intact, and no effort is made to "close it or alter it," and certainly not to lay out any new street. When it was altered by narrowing it, in 1857, it is not pretended that the requisite vote was not had, but to grant a privilege to the private possessor for value paid of what had once been the street, but was no longer such practically, is quite a different matter from altering it at first. So, section 216, in regard to the city commons, we think inapplicable here. It refers to the commons adjacent to the city, but not to the streets.

When this case was before this court on the application for an *ad interim* injunction, reported in 62 *Ga.*, 747, the denial of that injunction was affirmed; and, whilst that denial was put on the discretion of the chancellor and the indisposition of this court to interfere with its exercise, yet it seems to control to a great extent the present case. For whatever equity there may be in this complainant's bill depends on injury to him, and that injury depends on the question, is the value of his property decreased? and on that issue the same chancellor, now as jury and judge, by consent, has passed again and finds none, and this court is as reluctant to interfere with the verdict of a jury on contested facts, and the affirmance of that verdict by the presiding judge, as with the chancellor in granting or refusing a temporary injunction. So that in every view we are able to take of the case on law and fact, we can see no direct way through it but to affirm the judgment.

Judgment affirmed.